**HAND BALDACHIN & AMBURGEY LLP**
Carl M.R. van der Zandt
Sherli Yeroushalmi
8 West 40th Street, 12th Floor
New York, NY 10018
Tel:  (212) 295-2699
Fax: (212 376-6080
cvdzandt@hballp.com
syeroushalmi@hballp.com
*Counsel for Plaintiff and Counterclaim Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCHUTTE BAGCLOSURES INC., | ) |
| Plaintiff | ) |
| v. | ) |
| KWIK LOK CORPORATION, | ) |
| Defendant. | ) |
| | ) Case No. 12-cv-5541 (JGK) |
| KWIK LOK CORPORATION, | ) |
| Counterclaim Plaintiff | ) |
| v. | ) |
| SCHUTTE BAGCLOSURES INC., and SCHUTTE BAGCLOSURES B.V., | ) |
| Counterclaim Defendants | ) |

**PLAINTIFF SCHUTTE BAGCLOSURES INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

i

# **TABLE OF CONTENTS**

INTRODUCTION……………………… ........................................................................................1

ARGUMENT ..................................................................................................................................2

**I.**     IN THE CONTEXT OF THE MARKET FOR BAG CLOSURES, KWIK LOK'S PRODUCT CONFIGURATIONS CANNOT POSSIBLY BE INDICATIVE OF SOURCE……………………………………………………………………………..…...2

**II.**    THE FACT THAT KWIK LOK'S REGISTERED TRADEMARKS ARE "INCONTESTABLE" DOES NOT MEAN THAT SCHUTTE INC. CANNOT OBTAIN SUMMARY JUDGMENT……………………………………………………………...4

    A.     Because Kwik Lok's Product Configurations Are Generic, they Cannot be "Incontestable" Under the Lanham Act...........................................................…..4

    B.     The Unregistered Product Configurations Are Not Covered By the '043 or '545 Registrations………… ........................................................................................5

**III.**   KWIK LOK'S PURPORTED EVIDENCE OF SECONDARY MEANING FAILS AS A MATTER OF LAW…………......................................................................................7

**IV.**   KWIK LOK FAILS TO ADDRESS THE ARGUMENT THAT IT ABANDONED ITS MARK THROUGH NON-USE………………………………………………………7

**V.**    KWIK LOK MISAPPLIES THE FACTS TO THE POLAROID FACTORS IN AN ATTEMPT TO ARGUE THERE IS NO LIKELIHOOD OF CONFUSION…………...9

**VI.**   KWIK LOK'S ARGUMENT AS TO A LIKELIHOOD OF DILUTION DOES NOT CREATE ISSUES OF FACT, RELYING ON THE SAME ARGUMENTS……….…..10

CONCLUSION…………………………………………………………………….…...………10

**INTRODUCTION**

In its motion for summary judgment ("Schutte Mem.") Schutte Bagclosures Inc. ("Schutte Inc.") primarily relied on three basic premises: (1) the outside shapes of Kwik Lok's bag closures (the "Product Configurations") are not protectable "trade dress" because they do not identify the source of the products; (2) even if any particular closure shape may have some level of trade dress protection, Kwik Lok abandoned its trade dress rights by (i) changing the look of the closures before supplying those to customers, for example by gluing labels onto the closures, and (ii) by allowing third parties to use, alter, and resell the closures without limitations; (3) even if any particular closure shape may have some level of trade dress protection, there is no likelihood of confusion, which is particularly evident with the CLIPPS closures with their rounded corners and unique concave bottom.

Kwik Lok has not disputed the fundamental reality underlying these premises, and, indeed, fails to even respond directly to the first point. Furthermore, Kwik Lok does not make any distinction between the different shapes of the SCHUTLOK and CLIPPS bag closures.

In opposition, Kwik Lok attacks individual points or legal authorities in hopes of creating trade dress protection for itself *despite* the fact that no consumer relies on the shape of its products to identify their source.  This attempt should be rejected.  Where, as here, there can be no argument that the shape of the products is irrelevant to any purchasing decisions and is not and cannot be indicative of source, a party should not be permitted to piece together out-of-context legal authorities to convolute legal protections that run counter to governing Second Circuit authority on trade dress.

Kwik Lok has bombarded the Court with hundreds of pages of documents in an ultimate attempt to make this matter seem much more complicated than it in fact is. Throughout decades

1

of trademark prosecution and litigation, as well as before this Court, the only trade dress element consistently claimed by Kwik Lok is the so called beveled or chamfered corners of the closures. Kwik Lok has admitted that the CLIPPS closures do not have beveled or chamfered corners. Therefore, at a minimum the Court should grant Schutte Inc.'s request for a declaratory judgment of non-infringement with regards to the CLIPPS closures.

## ARGUMENT

### I. IN THE CONTEXT OF THE MARKET FOR BAG CLOSURES, KWIK LOK'S PRODUCT CONFIGURATIONS CANNOT POSSIBLY BE INDICATIVE OF SOURCE.

The question for this Court, and the question addressed in the heart of Schutte Inc.'s moving papers, is whether purchasers are "likely to perceive" the trade dress as a design that "identifies goods or services produced or sponsored" by Kwik Lok. *See id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1008 (2d Cir. 1995)). Moreover, courts evaluating trade dress claims need to be wary of vague, general claims of trade dress protections, because trade dress law does not protect an idea, concept or generalized type of appearance. *Id.* at 18 (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995)).

As set forth in great detail in Schutte Inc.'s moving papers, Kwik Lok simply cannot meet these standards for several reasons. *See* Schutte Mem. at p. 16-18. Further illustrating the vague nature of its claims, as this litigation progresses, Kwik Lok conveniently changes its trade dress descriptions as needed to suit their arguments. Specifically, as for the '043 Registration, which Kwik Lok claims covers virtually all of its Product Configurations (*see* Miller Decl, Dkt. #115, ¶8), is now newly described as "*an arbitrary and unique rectangular three-dimensional configuration of the perimeter of the plastic closure that includes chamfers or beveled portions on each corner and a beveled triangular slot opening at the center of one side.*" Kwik Lok Mem. at p. 3; Miller Decl., Dkt # 115, ¶8. But this description is meaningless, especially in view

2

of the wide array of Product Configurations Kwik Lok claims it covers. The entire first part of the description – "*an arbitrary and unique rectangular three-dimensional configuration of the perimeter of the plastic closure*" – can be distilled to "*a plastic rectangle*." The descriptions "*arbitrary*", "*unique*," and "*three-dimensional*" add nothing. Thus, the only actual "*design*" elements included are "*chamfers or beveled portions at each corner*" and now for this first time mentioned, a "*beveled triangular slot opening at the center of one side*." This is perplexing in light of the fact, nowhere before, in any prosecution nor in any legal proceedings, has Kwik Lok claimed rights to the shape of the opening aperture. In fact, in the Dutch proceedings between Kwik Lok and Schutte Bagclosures B.V. ("Schutte B.V."), Kwik Lok explicitly stated that it "*does not claim protection for the shape of the opening*." See KL0005104. Kwik Lok is estopped from making any claims to protection for the shape of the opening. Furthermore, if the Series J-NRP, JM-NRP, VW-NRP and RL, all have "*chamfers or beveled portions at each corner*", the same as the shape in the '043 Registration then the trade dress apparently covers essentially any shape. *See* Affidavit of Carl van der Zandt ("Van der Zandt Aff.") at ¶ 1, Exh. A. In any event, as demonstrated in Schutte Inc.'s moving papers, the CLIPPS line of products *don't even have beveled corners,* and in addition, they all have a unique concave side that none of Kwik Lok products possess. *See* Schutte Mem. at pp. 27-28. Thus, if this feature is what makes the trade dress, then there can be no infringement with the CLIPPS products.

During his deposition, when asked specifically about Kwik Lok's trade dress, Mr. Miller could not identify one single feature or element. *See* Deposition of Hal Miller ("Miller Depo.") at pp. 57-58. Yet, weeks later, this designated 30(b)(6) witness whom Schutte Inc. was told could only speak to issues concerning sales and marketing, comes forward with descriptions, in large bold print, of designs for each of KL's claimed trade dresses. The self-serving declaration is an

attempt by attorneys to create a trade dress from whole cloth and should not be rewarded. Schutte Inc. is entitled to summary judgment.[1]

## II.     THE FACT THAT KWIK LOK'S REGISTERED TRADEMARKS ARE "INCONTESTABLE" DOES NOT MEAN THAT SCHUTTE INC. CANNOT OBTAIN SUMMARY JUDGMENT.

As a threshold matter, Schutte Inc. submits that were the Court to find that Kwik Lok's Product Configurations, including the registered trademarks, were not indicative of source and therefore not protectable, by the same reasoning, they are generic.

### A.   Because Kwik Lok's Product Configurations Are Generic, they Cannot be "Incontestable" Under the Lanham Act.

As is clear from Schutte Inc.'s motion papers, to the extent that there is any trade dress here at all, the trade dress is generic. *See* Schutte Mem. at 14-21. A generic mark is not entitled to "incontestable" validity, even where registered and unchallenged for five years. *See City of New York v. Tavern on Green,* 94 U.S.P.Q.2d 1519, 1526 (S.D.N.Y. 2010) ("Section 1065 provides that an otherwise incontestable mark may be challenged "on a ground for which application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title."). Thus, if the Court agrees with Schutte Inc.'s argument that the two registered trademarks are generic and not protectable, their statutory "incontestability" does not save them.

Kwik Lok has maintained a monopoly in this country, first through patents and now through claims of trade dress protection, so it is essentially the only company marketing sheet plastic bag closures *at all* in the United States. Indeed, it is highly revealing that the only claim of "*uniqueness*" or "*unusualness*" of the Product Configurations (*i.e.* non-genericness) made by Kwik Lok is limited to the *U.S. market* – the last remaining monopoly. *See* Kwik Lok Mem. at

---

[1] Kwik Lok cites *to Fibermark, Inc v. Brownville Specialty Paper Prods*., No. 7:02-cv-0517, 2005 BL 88195, at *5 (N.D.N.Y. May 11, 2005), to help defend its vague and overbroad descriptions, by implying that showing pictures of its products is sufficient to overcome its lack of specificity. In fact, Fibermark actually states that a plaintiff must "articulate and support its claimed trade dress with sufficient particularity… plaintiff must identify the specific elements which comprise its distinct dress." *Id*. Furthermore, "[Plaintiff] must nonetheless be able to point to the elements and features that distinguish its trade dress." Id. Kwik Lok has failed to do just this.

17 (citing Miller Decl., ¶21); *see also* KL000870; Deposition of Jerre Paxton, April 2, 2014 ("Paxton Depo."), at pp. 93-110.

Schutte Inc.'s evidence that the Product Configurations are nothing more than "generic" rectangular shaped bag closures stands largely unrebutted. The witness *designated by Kwik Lok* to testify as to what constituted the protected trade dress: Mr. Jerre Paxton, President and CEO of Kwik Lok, was unable to identify any trade dress elements. Paxton Depo. at pp.26, 39.

Furthermore, as further discussed below, Schutte Inc. also argued in detail that there can be no likelihood of confusion, given the context of the sales of these products and the market in which they are sold. Schutte Mem. at pp. 26-31.  As is clear from the authority cited by both parties, where there is no likelihood of confusion between a conclusively valid mark and its competitor, then the competitor is entitled to summary judgment. *See Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*, 269 F.3d 114, 120 (2d Cir. 2001).  Thus, even if the Court does find Kwik Lok's trademarks to be valid and incontestable, it may still grant summary judgment on its declaratory judgment causes of action for non-infringement and non-dilution.

> **B. The Unregistered Product Configurations Are Not Covered By the '043 or '545 Registrations.**

The Unregistered Product Configurations are entirely dissimilar from the '043 and '545 Registrations, at least based on the attempts by Kwik Lok to define those registrations.  As such, they cannot reasonably be found to be covered by the registered trademarks. Yet, Kwik Lok still argues that it believes that nearly *all* of its unregistered trade dress designs are covered by the '043 and '545 registrations.  *See* Kwik Lok Mem. at 13.

After finally getting approval for its trade dress following five separate rejections, Kwik Lok attempted to further expand its trade dress by submitting specimens of what it calls the "Beveled Rectangle" as examples under the '043 Registration. *See* Saidman Decl, ¶¶ 10-20;

5

Kwik Lok Mem. at p. 13.  But, when one actually compares the "specimens" provided to the U.S. PTO (*see* Declaration of Perry Saidman ("Saidman Dec.") ¶ 30) with the pictures of the "Beveled Rectangle" in Kwik Lok's memorandum (Kwik Lok Mem. at p. 5), it is impossible to understand how the two are the same product.

The "specimen", like the drawing in the '043 Registration, has straight sides and clear bevels at each corner.  Thus, it is not surprising that the U.S. PTO may have considered it sufficiently similar.  But the product now claimed by Kwik Lok to be the "Beveled Rectangle" has irregular sides and no clear bevels at all.  *See* Kwik Lok Mem. at p. 5.  Thus, despite that Kwik Lok *now* uses the same term to describe two different products, there is no indication that the U.S. PTO found that the product in Kwik Lok's memorandum was covered by the '043 Registration.  For this reason, Kwik Lok provides no support for its contention that the "Beveled Rectangle" (Kwik Lok's W-Series and Y-Series) has been found by the U.S. PTO to be covered by the '043 Registration.

Similarly, although admittedly a closer call, the "Beveled Notched Rectangle" submitted to the U.S. PTO (Saidman Dec. ¶31) also had relatively straight sides and more clear bevels than the product now claimed by Kwik Lok to be the "Beveled Notched Rectangle". Kwik Lok Mem. at p.5. Thus, by using vague terminology, Kwik Lok is trying to expand the coverage of the '043 Registration to dissimilar products.  Or, it is conceding that the '043 Registration is sufficiently vague to cover virtually any rectangular closure.

It is clear from the foregoing that the U.S. PTO made no decision about the *actual* products that Kwik Lok *now* claims are covered by the '043 Registration – the "Beveled Rectangle" nor the "Beveled Notched Rectangle."  As Kwik Lok submits no other evidence to

support this contention, the Court should find that the Unregistered Product Configurations are not protected under the '043 Registration.

### III. KWIK LOK'S PURPORTED EVIDENCE OF SECONDARY MEANING FAILS AS A MATTER OF LAW.

Kwik Lok relies exclusively on its own actions in an attempt to establish that its trade dress has established secondary meaning. Kwik Lok points only to its sales volume, monopoly in the market, and the fact that Schutte Inc.'s products are of the same type as Kwik Lok's products. While it is true that the Second Circuit has looked to sales success and length of exclusive use to determine secondary meaning, *see* Kwik Lok Mem. at pp. 15-16, these factors alone cannot establish secondary meaning. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 15:47 (4th ed.2003) (noting significant product sales "may be due to dozens of factors, only one of which may be the drawing power of the trademark"). If it were otherwise, then the appearance of virtually every successful product would have secondary meaning. As discussed in Schutte Inc.'s papers, the length of *exclusive* use of the shapes by Kwik Lok and its sales volume are the result of Kwik Lok's monopoly, nothing more.

Almost all of Kwik Lok's advertising promotes functionality of features, not the claimed "trade dress" (Schutte Mem. at p. 22); none of Kwik Lok's advertising is "look for" advertising, or even hints at what makes the claimed "trade dress" distinctive or indicative of source (Schutte Mem. at pp. 22-23); and, more generally, given the context and the market, no consumer would even rely on the claimed trade dress as indicative of source. Schutte Mem., pp. 14-21.

### IV. KWIK LOK FAILS TO ADDRESS THE ARGUMENT THAT IT ABANDONED ITS MARK THROUGH NON-USE.

Although Kwik Lok recognizes that Schutte Inc. raised three arguments regarding abandonment, and states that one was "non-use" of the trade dress as a designator of source, it completely fails to address this point. *See* Kwik Lok Mem. at pp. 20-23. Schutte Inc.'s

7

memorandum explains that the only advertisements that Kwik Lok used showing the actual product did not use the product shape as a trademark, but merely showed the functional benefits of the closures. *See* Schutte Mem. at p. 25.   The advertisements submitted by Kwik Lok strongly reinforce this argument, as they repeatedly show the products, but only in the context of discussing function or pricing benefits.  *See, e.g.,* Miller Decl. (Dkt. # 115), Exh. K, L, M.

Those same advertisements also serve to support Schutte Inc.'s arguments regarding Kwik Lok's abandonment through inconsistent use of its closures, and by allowing others to use their "trade dress" to promote their own products and trademarks. The very advertisements that Kwik Lok claims show or highlight their protected trade dress actually illustrate how *other unrelated* third parties can and should use exactly the same trade dress to advertise their *own* products.  *See, e.g.,* Miller Decl., Exh. K-M. Thus, Kwik Lok's advertisements to *its own customers* use the claimed protected Product Configurations as a means to encourage advertising of *third party* products. These actions have caused any Kwik Lok trade dress rights to "lose [their] significance," so even under Kwik Lok's authority, these actions constitute grounds for "a loss of all rights in the mark[s]."  Kwik Lok Mem. at p. 23.

Finally, Kwik Lok claims that the fact that it allows its distributors and other third parties to sell its goods without protecting the Product Configurations is not abandonment because its sale of those products would not infringe Kwik Lok's trademark rights.  Kwik Lok Mem. at 21. It bases this contention on the fact that such sale of Kwik Lok's products would not "deceive the public or damage the mark owner's goodwill."  *Id.*  But this entirely misses the point – Kwik Lok has *no way* to argue that any third party's resale of its products will not confuse the public or damage Kwik Lok's goodwill *because it puts no restrictions on those third parties.*  This is exactly *why* absence of any license or restrictions on third party use is abandonment.  As Kwik

8

Lok concedes, those third parties can do whatever they want with the products, up to and including attaching labels, and using the closures to designate *an entirely different* source of the products. This is quite literally abandonment of the claimed trade dress.

As there is no dispute about any of the foregoing facts, Schutte Inc. submits that summary judgment is appropriate here insofar as Kwik Lok has abandoned any trademark or trade dress protections it may have had. [2]

### V.    KWIK LOK MISAPPLIES THE FACTS TO THE *POLAROID* FACTORS IN AN ATTEMPT TO ARGUE THERE IS NO LIKELIHOOD OF CONFUSION.

As is consistently the case throughout Kwik Lok's Mem., Kwik Lok ignores the undisputed context of this market in attempting to argue that there is a likelihood of confusion. Rather, it goes through the *Polaroid* factors as though these products were competing soft drinks on a shelf, relying on the fact that these bag closures compete with each other and have similar appearances. However, the *Polaroid* factors are a guide for an analysis of the issues, not an exhaustive list of prerequisites; the Court needs to look at the totality of the circumstances. *See Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997) ("[n]o one of the Polaroid factors is dispositive, and the list is not exhaustive.").

In all events, Kwik Lok's points do not create an issue of fact regarding a likelihood of confusion. Kwik Lok again attempts to escape the actual facts by relying on its registrations, arguing that the registrations are incontestable. Kwik Lok Mem. at pp. 24-25. Schutte Inc. respectfully refers the Court to the foregoing discussion as to the fact that these registrations do cannot protect generic trade dress, and do not cover the Unregistered Product Configurations.

---

[2] Kwik Lok cites to a number of cases to substantiate its claim that where a trademark owner's branded product is used by a third party as a component, ingredient, feature or material in the third party's product, such use does not constitute infringement. However, none of these cases are applicable to the situation at hand. *See, e.g., Polymer Tech v. Mimr*an, 975 F.2d 58, 62 (2d Cir. 1992) (holding that infringement would not apply only in cases when the distributor provided a disclosure statement to each customer with each sale).

Finally, Kwik Lok misses the point of Schutte Inc.'s discussion of dissimilarities of the claimed "marks." Schutte Inc. was not merely pointing to differences in the product shapes; it was showing that there is no similarity in the elements that Kwik Lok claims constitute its trade dress: the "beveled" corners. *See* Schutte Mem. at pp. 27-28. In sum, when looking at all of the circumstances, there is no possibility of confusion here, especially regarding the CLIPPS, with their rounded corners and unique concave bottom.

### VI. KWIK LOK'S ARGUMENT AS TO A LIKELIHOOD OF DILUTION DOES NOT CREATE ISSUES OF FACT, RELYING ON THE SAME ARGUMENTS.

Kwik Lok relies on the same few facts supporting its claims of a likelihood of dilution – its sales volume, its advertising of the products, and the claimed similarity of the marks. *See* Kwik Lok Mem. at pp. 27-29. As explained above, the sales volume is merely reflective of the monopoly Kwik Lok currently enjoys. In any event, as demonstrated by the very advertising Kwik Lok submits to the Court, the advertising shows that the sales volume is not based on and does not rely on the claimed trade dress at issue in this court. Finally, whatever similarities there are in the products are unrelated to Kwik Lok's claimed trade dress. Thus, for all of the above reasons, there can be no likelihood of dilution here.

### CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant Schutte Inc.'s motion for Summary Judgment.

Dated: July 7, 2014

Respectfully submitted,
/s/ Carl M.R. van der Zandt
HAND BALDACHIN & AMBURGEY LLP
Carl M.R. van der Zandt
Sherli Yeroushalmi
8 West 40th Street, 12th Floor
New York, NY 10018
Tel: (212) 295-2699
Fax: (212 376-6080
cvdzandt@hballp.com
*Counsel for Plaintiff*

10