UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

SCHUTTE BAGCLOSURES INC.,

                  Plaintiff,          12 Civ. 5541 (JGK)

      - against -           OPINION AND ORDER

KWIK LOK CORPORATION,

                Defendant.
────────────────────────────────────

KWIK LOK CORPORATION,

         Counterclaim Plaintiff

      - against -

SCHUTTE BAGCLOSURES B.V.,

         Counterclaim Defendant.

────────────────────────────────────

JOHN G. KOELTL, District Judge:


    This case concerns the well-known, small plastic clips
commonly used to close bags of items such as bread and fruit.
The defendant, Kwik Lok Corporation ("Kwik Lok"), has been
manufacturing and distributing these bag closures within the
United States for many years, competing with other popular forms
of bag closures such as twist ties.  Counterclaim defendant
Schutte Bagclosures B.V. ("Schutte BV") has sold similar plastic
clip bag closures in Europe, and has incorporated plaintiff

Schutte Bagclosures Inc. ("Schutte Inc.") in New York with the
intention of entering the United States bag closure market.[1]

Schutte Inc. seeks a judgment against Kwik Lok declaring
that Schutte Inc.'s use of its plastic bag closure products does
not infringe on Kwik Lok's registered trademarks for its own bag
closure products.  Kwik Lok has filed counterclaims against
Schutte Inc. for, among other claims, federal trade dress
infringement and dilution.  Kwik Lok has brought third party
claims against Schutte BV for substantially the same claims of
federal trade dress infringement and dilution.

Presently before the Court are a motion by the Schutte
parties to dismiss the counterclaims and third party claims and
cross-motions for summary judgment by Kwik Lok and Schutte Inc.
Schutte BV has moved to dismiss the claims against it pursuant
to Federal Rule of Civil Procedure 12(b)(2) on the grounds that,
as a Netherlands corporation, it has insufficient contacts with
New York to be subject to jurisdiction under New York law or the
United States Constitution.  Schutte BV and Schutte Inc. have
also moved to dismiss the counterclaims and third party claims
pursuant to Federal Rule of Civil Procedure 12(b)(6) on the
grounds that Kwik Lok's allegations of infringement do not

---

[1] The parties refer to Schutte Inc. and Schutte BV as counterclaim defendants
even though Schutte BV is more properly termed a third party defendant.  The
Court will accept the parties' terminology and refer to both Schutte parties
as counterclaim defendants.

plausibly state a claim upon which relief may be granted, or alternatively, for summary judgment on these claims.

Kwik Lok moves for partial summary judgment, urging that for the products added by Schutte Inc. in its Second Amended Complaint, there is no case or controversy under the Declaratory Judgment Act because Schutte Inc. has taken no steps to market any of those products in the United States.  Kwik Lok offers to withdraw its counterclaims as to each product for which this Court finds there is no real controversy.  Following argument of the current motion, Schutte Inc. withdrew numerous claims and limited its claims to those affecting one line of its bag closure products.

I

There is no dispute as to the following facts, except where noted.

A.

The defendant and counterclaim plaintiff in this action, Kwik Lok, is incorporated and based in the State of Washington, and has been manufacturing and distributing plastic bag closures in the United States for more than fifty years.  (See Sec. Am. Countercl. ¶¶ 2, 15.)  Counterclaim defendant Schutte BV is a Netherlands corporation that manufactures and distributes

3

plastic bag closures in Europe.  (See Sec. Am. Compl. ¶ 96.)
Plaintiff and counterclaim defendant Schutte Inc. was
incorporated in New York as the wholly owned subsidiary of
Schutte BV, and is presently based in New York as the U.S.
marketing arm for Schutte BV.  (See Sec. Am. Compl. ¶¶ 1, 123;
Abbenhuis Dep. at 158, Jan. 29, 2014.)

     The first dispute between these parties took place in the
Netherlands.  In March of 2010, the Court of Appeal of the Hague
issued a final appeal decision in Kwik Lok Corporation v.
Schutte Bagclosures, BV, in which Kwik Lok had asserted
infringement claims under its European patent, trademark, and
trade dress rights against Schutte BV.  (See May 23, 2014 Decl.
of Brian McQuillen ("May 23 McQuillen Decl.") ¶ 2, Ex. A.)  The
Court determined that Kwik Lok's European Community Trade Dress
Registration No. 55848429 was functional and thus invalid, and
that Schutte BV's G-Series bag closures did not infringe on any
of Kwik Lok's European patent, trademark, or trade dress rights.
(See May 23 McQuillen Decl. ¶ 2, Ex. A.)

     Kwik Lok has two registered trademarks for its product
configurations in the United States, both registered in 1996:
United States Trademark Registration No. 1,975,545 (the "'545
Registration"), for a thin, rectangular plastic bag closure with
two arched edges along the top and bottom, parallel edges on the

4

sides, and a beveled triangular slot opening at the center of one of the arches; and United States Trademark Registration No. 1,972,043 (the "'043 Registration"), for a thin, square plastic bag closure with beveled portions on each corner, and a beveled triangular slot opening at the center of one side. (See Am. Countercl. ¶¶ 13-25; June 20, 2014 Decl. of Hal Miller ("June 20 Miller Decl.") ¶¶ 5-8, Exs. Y, Z.)  Kwik Lok has been selling products under these trademarks continuously each year since 1996, as well as similarly configured products for which it claims unregistered trade dress rights.  (See Sec. Am. Compl. ¶¶ 118-20; June 20 Miller Decl. ¶¶ 7, 9, 12-19, Exs. S, T, W.)

In 2011 and 2012, Schutte BV began to evaluate entry into the United States market, from which it had been previously absent.  (See Sec. Am. Compl. ¶¶ 118-20; June 20, 2014 Decl. of Brian McQuillen ("June 20 McQuillen Decl.") ¶ 2, Ex. A.)  On April 19, 2012, Schutte BV incorporated Schutte Inc. under New York law in order to serve as its United States operating entity.  (See Sec. Am. Compl. ¶ 123.)  Schutte BV had previously met in the Netherlands with a United States business services company, TABS Inc., which accepted Schutte Inc. as a client after it was incorporated. (See Willemsen Dep. at 15-17.)

**B.**

In this action, Schutte Inc. requests a declaratory judgment of non-infringement and non-dilution of Kwik Lok's U.S. trade dress rights by five of Schutte Inc's products in the "Clipps" product line, including Types G, GL, BL, T, and K. (See Sec. Am. Compl. ¶ 101, Ex. D).[2] Schutte Inc.'s products are generally square or rectangular, with four rounded corners with four small jagged protrusions near each rounded corner, a "v" shaped opening along one side, and a concave side opposite the side with the opening.   (See Sec. Am. Compl. ¶ 104, Ex. D.) Schutte Inc. also seeks to cancel Kwik Lok's '043 Registration and claims damages under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York General Business Law §§ 349, 350, and 350-a for Kwik Lok's alleged false advertising.[3]

Schutte BV designs and manufactures all of the Schutte products in the Netherlands.  (See Abbenhuis Aff. ¶ 8.)  In June of 2012, Schutte BV shipped samples of over 100,000 Clipps G-Series bag closure products to the TABS Inc. office for Schutte Inc. to use in promotion in New York. (See Sec. Am. Compl. ¶ 126; Jan. 29 Abbenhuis Dep. at 106-08, Ex. 15.)  As of

---

[2] Schutte had originally requested a declaratory judgment as to eleven of its products, but recently agreed to withdraw its request as to the "Schutlok" product line, including Types A, B, T, K, G, and L.
[3] Schutte Inc has withdrawn its claims for cancellation of Kwik Lok's '545 and '804 Registrations.

December 2013, Schutte Inc. had not designed, manufactured, or
offered any products for sale in the United States.  (See
Abbenhuis Aff. ¶ 7.)  Furthermore, the Clipps G-Series was the
only product being promoted on the Schutte website,
www.clippsamerica.com.  (See Jan. 29 Abbenhuis Dep. at 175).
Besides the G-Series, no other Schutte products had been shipped
into the United States, and nothing had been done to promote
Schutte products in the United States as of April, 2014.  (See
Abbenhuis Dep. at 281, 315, Apr. 14, 2014.)

### C.

This lawsuit was filed by Schutte Inc. on July 18, 2012.
In its original complaint, Schutte Inc. sought a narrower
declaration, requesting declaratory relief only for a single
"Schutte Device."  (Compl. ¶ 18.)  Schutte Inc. claimed that
Schutte BV developed a version of the device Schutte BV used in
the European market specifically for the United States market.
(Compl. ¶ 18.)  What Schutte Inc. then referred to as the
"Schutte Device" appeared to consist of two of its products, the
Clipps G-Series, which it had shipped into the United States,
and the Clipps GL-Series.  (See Compl. Ex. E; Am. Compl. Ex. D.)
Schutte Inc. filed an amended complaint on December 10, 2012,
expanding its requested relief by adding nine additional Schutte
products on which it sought a declaratory judgment.  (Am. Compl.

¶ 74, Ex. D.)  On December 28, 2012, Kwik Lok filed a motion to dismiss the amended complaint on the grounds that this Court lacked subject matter jurisdiction over the declaratory judgment claims, and a motion to dismiss the state and federal false advertising claims, the false patent marking claim, and the monopolization claim for failure to state a claim.

On July 23, 2013, this Court issued an order granting Kwik Lok's motion in part and denying it in part.  This Court found that, at the motion to dismiss stage prior to fact discovery, Schutte Inc.'s allegations presented a sufficient case or controversy under the Declaratory Judgment Act for subject matter jurisdiction over at least some of its claims.  This Court found that Schutte Inc. had standing at that stage as well, but granted Kwik Lok's motion to dismiss without prejudice Schutte Inc.'s trademark cancellation claims.  This Court granted Kwik Lok's motion to dismiss Schutte Inc.'s false patent marking claim, but denied the motion to dismiss with respect to Schutte Inc.'s false advertising and monopolization claims. This Court also denied Kwik Lok's motion to transfer this action to the Western District of Washington.

Schutte Inc. filed its second amended complaint on August 6, 2013, and Kwik Lok filed counterclaims in an amended answer on September 5, 2013, naming Schutte BV as a counterclaim

defendant.  On November 15, 2013, Kwik Lok filed a second amended answer and amended counterclaims.  On December 31, 2013, the Schutte parties filed their present motions to dismiss the counterclaims.  On May 8, 2014, this Court stayed expert discovery until the parties' pending motions were resolved, but the parties continued with fact discovery, which has now been completed.  On May 23, 2014, Kwik Lok filed its present motion for summary judgment.  On May 27, 2014, Schutte filed its present cross-motion for summary judgment.

### III

### A.

The counterclaim defendant Schutte BV moves to dismiss the complaint against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

A district court has "broad discretion" in deciding a motion to dismiss for personal jurisdiction pursuant to Rule 12(b)(2), including the discretion to conduct an evidentiary hearing if the Court believes one is warranted.  See CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001).  To survive a motion to dismiss where no evidentiary hearing is held, the plaintiff need only make a prima facie case that the defendant is subject to the Court's

personal jurisdiction.   See In re Magnetic Audiotape Antitrust
Litig., 334 F.3d 204, 206 (2d Cir. 2003); PDK Labs, Inc. v.
Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Rubinbaum LLP
v. Related Corporate Partners V, L.P., 154 F.Supp.2d 481, 486
(S.D.N.Y. 2001).   The Court must construe the pleadings and
supporting affidavits in the light most favorable to the
plaintiff.   See CutCo Indus., 806 F.2d at 365; see also Berwick
v. New World Network Int'l, No. 06 Civ. 2641, 2007 WL 949767, at
*9 (S.D.N.Y. Mar. 28, 2007).   However, once discovery has been
completed, as is true in this case, the plaintiff's prima facie
case must be supported by an averment of facts that, if credited
by the factfinder, would suffice to establish jurisdiction over
the defendant.   See Dorchester Fin. Sec., Inc. v. Banco BRJ,
S.A., 722 F. 3d 81, 85 (2d Cir. 2013) (citing Ball v.
Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.
1990)).

    Because the Lanham Act does not provide for nationwide
service of process, this Court looks to the personal
jurisdiction rules of the forum state.   See Sunward Elecs., Inc.
v.. McDonald, 362 F. 3d 17, 22 (2d Cir. 2004).   The Court must
therefore determine whether New York law allows the exercise of
personal jurisdiction and, if so, whether doing so comports with
constitutional due process guarantees. See Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945); Clarendon Nat. Ins. Co. v.

Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001); see also M. Shanken Commc'ns, Inc. v. Cigar500.com, No. 07 Civ. 7371, 2008 WL 2696168, at *3 (S.D.N.Y. July 7, 2008).

**B.**

Kwik Lok first argues that personal jurisdiction over Schutte BV is proper under CPLR § 302(a)(1) because Schutte BV has directed business transactions at New York.

CPLR § 302(a)(1) authorizes jurisdiction where the defendant, "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Under New York law, for § 302(a)(1) to apply, the cause of action must "arise out of" a defendant's activities in New York. See, e.g., CutCo Indus., 806 F.2d at 365.

Transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." Broad Horizons, Inc. v. Central Crude Ltd., No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (citation omitted); see also Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1259 (S.D.N.Y.1995), aff'd, 201 F.3d 431 (2d Cir. 1999); Cavalier Label Co., Inc. v. Polytam, Ltd., 687 F. Supp. 872, 876 (S.D.N.Y. 1988). Courts in New York

11

focus on "whether the defendant's conduct constitutes purposeful [ ] avail[ment] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Best Van Lines, Inc., v. Walker, 490 F.3d 239, 247 (2d Cir. 2007) (internal quotation marks omitted) (citations omitted); accord Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000); see also CutCo Indus., 806 F. 2d at 365; Ainbinder v. Potter, 282 F. Supp. 2d 180, 187 (S.D.N.Y. 2003); Clarendon, 152 F. Supp. 2d at 516.  The courts consider a range of "purposeful activity," and even a single transaction of business is sufficient to give rise to personal jurisdiction under CPLR § 302(a)(1), if the claim arises out of the transaction.  See Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (collecting cases); see also M. Shanken Commc'ns, 2008 WL 2696168, at *3-4.[4]

Kwik Lok puts forth two main grounds on which it contends that Schutte BV transacted business in New York.  First, Schutte BV has taken several acts on its own that are directed towards New York regarding the very products alleged to be infringing.

---

[4] The Supreme Court recently issued a decision regarding personal jurisdiction over corporations in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), in which it affirmed that the exercise of general jurisdiction over a corporation is limited to where the corporation is "essentially at home." Id. at 750.  A corporation is generally "at home" in a state where it is incorporated and the state where it has its principal place of business. Id. at 760.  Because this suit arises out of Schutte BV's contacts with New York, it concerns specific jurisdiction under § 302(a)(1), and general jurisdiction is not at issue.

Second, Schutte BV established Schutte Inc. in New York for the purpose of marketing the products that are at issue here, and controls the actions of Schutte Inc. such that Schutte Inc.'s acts may be attributed to Schutte BV because Schutte Inc. is the agent of Schutte BV.

For Schutte BV's own actions, Kwik Lok points to its shipment of reels containing at least 100,000 bag closures to New York, its sending of promotional materials to TABS Inc. to be sent to New York bakeries prior to the formation of Schutte Inc., and its hiring of a New York law firm for representation in obtaining a U.S. trademark registration for its products. Schutte BV responds that the 100,000 bag closures are only worth approximately one hundred U.S. dollars and that most of them were sent to Schutte Inc. without any attempt to market or sell them in the United States. Schutte BV argues that it only researched and compiled a list of bakeries to whom the closures might be marketed from within the Netherlands, and that the law firm was hired through a third party, and therefore neither of these bases suffices to establish jurisdiction.

Taken together, Kwik Lok's factually-supported allegations as to Schutte BV's contacts with New York are sufficient to exercise jurisdiction over Schutte BV under § 302(a)(1).  The shipping of a single allegedly infringing product combined with

13

the business activity of an associated company in the forum is enough to establish jurisdiction.  See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 165 (2d Cir. 2010). Schutte BV purposefully availed itself of New York's laws and this action arose out of those contacts.  In deciding that it would begin to market in the United States and in the New York market in particular, Schutte BV designed, developed, and sent samples and promotional materials to Schutte Inc. and TABS Inc., which were in turn sent to potential customers in New York. (See Jan. 29 Abbenhuis Dep. at 74-76, 101-110); Parker Waichman Alonso LLP v. Orlando Firm, P.C., No. 09 Civ. 7401, 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010) (finding personal jurisdiction where there were "tangible manifestations" of the defendant's intent to reach the New York market); see also Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp. 494, 498 (S.D.N.Y. 1997) (same).

Furthermore, Kwik Lok has made out a prima facie case of jurisdiction over Schutte BV based on Schutte Inc.'s acts as an agent.  In order to make a prima facie showing of jurisdiction under an agency theory, the plaintiff does not need to establish a "formal agency relationship." See Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006).  The plaintiff must demonstrate that the agent

14

"engaged in purposeful activities in this State in relation to
[the allegedly infringing products] for the benefit of and with
the knowledge and consent of the ... defendant[], and that
[defendant] exercised some control over [the corporation] in the
matter." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323
(S.D.N.Y. 1998) (quoting Kreutter v. McFadden Oil Corp., 71
N.Y.2d 460, 467 (1988)). "At the heart of this inquiry is
whether the out-of-state corporate officers were primary
actor[s] in the transaction in New York that gave rise to the
litigation, and not merely some corporate employee[s] ... who
played no part in it." Id. (quoting Retail Software Servs., Inc.
v. Lashlee, 854 F. 2d 18, 22 (2d Cir. 1988)). To make a prima
facie showing of control "a plaintiff's allegations must
'sufficiently detail the defendant's conduct so as to persuade a
court that the defendant was a 'primary actor' in the specific
matter in question; control cannot be shown based merely upon a
defendant's title or position ... or upon conclusory allegations
that the defendant controls the corporation." Id. See also M.
Shanken Commc'ns, 2008 WL 2696168, at *3.

Therefore, in order to establish that Schutte Inc. served
as Schutte BV's agent in New York, Kwik Lok must show that (1)
Schutte Inc. engaged in purposeful activities in New York, (2)
for the benefit of and with the knowledge and consent of Schutte

BV, and (3) Schutte BV exercised some control over those actions.

It is undisputed that Schutte Inc. engaged in purposeful activities in New York by conducting marketing and promotion of its Clipps G-Series product.  Schutte BV incorporated Schutte Inc. in order to market the products that Schutte BV designs, manufactures, and promotes.  (See Abbenhuis Aff. ¶ 9; Sec. Am. Compl. ¶¶ 1, 123; Jan. 29 Abbenhuis Dep. at 158.)  Schutte Inc. has no employees, and its only two corporate directors are also the corporate directors of Schutte BV.  (See Jan. 29 Abbenhuis Dep. at 11, 13, 18-19, 103.)  Schutte BV wholly owned Schutte Inc. at the time it was incorporated and appears to be fully funding all of Schutte Inc.'s expenses. (See Jan. 29 Abbenhuis Dep. at 144-46, 158.)  Kwik Lok has offered sufficient facts to show that Schutte BV benefits from Schutte Inc.'s success, and is aware of and has some control over its allegedly infringing actions.  See In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 336-37 (S.D.N.Y. 2000) (finding personal jurisdiction under agency theory due to financial stake in and benefit from complained-of transactions).  Schutte Inc.'s actions can thus be imputed to Schutte BV for jurisdictional purposes.

## C.

Kwik Lok argues in the alternative that the Court has jurisdiction over Schutte BV pursuant to CPLR § 302(a)(2).  That section generally provides for specific jurisdiction over an out-of-state defendant that commits a tortious act within the state.  Because there is jurisdiction over Schutte BV under § 302(a)(1), there is no need to address this allegation.

## D.

Jurisdiction over Schutte BV must also comport with the constitutional requirement of due process.  There are two parts to the due process test for personal jurisdiction: the "minimum contacts" inquiry and the "reasonableness" inquiry.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002).  The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum state to justify the court's exercise of personal jurisdiction over the defendant.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Daimler, 134 S. Ct. at 754 (stating that International Shoe remains the "canonical opinion" for determining personal jurisdiction).  In determining whether minimum contacts exist, courts must examine the "quality and nature" of the contacts under a totality of circumstances test, to determine whether the defendant has "purposefully avail[ed]

17

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws ... such that [the defendant] should reasonably anticipate being haled into court there." Best Van Lines, Inc., 490 F.3d at 242-243 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 and (1985)) (internal citations omitted).  Courts should consider the relationship among the defendant, the forum, and the litigation.  Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998).

The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice" under the circumstances of the particular case.  Calder v. Jones, 465 U.S. 783, 788 (1984) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The Court must take into account five factors in this inquiry: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering

substantive social policies.  See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113-14 (1987); see also Burger King Corp., 471 U.S. at 476-77; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Bank Brussels Lambert, 305 F.3d at 129; M. Shanken Commc'ns, 2008 WL 2696168l, at **8-9.

The exercise of jurisdiction over Schutte BV would not violate the constitutional guarantee of due process because it satisfies the minimum contacts requirement and comports with "traditional notions of fair play and substantial justice." Calder, 465 U.S. at 788 (quoting Milliken, 311 U.S. at 463). Schutte BV has sufficient minimum contacts with New York based on its shipments of samples and promotional materials into New York with the intent to expand its marketing in New York.  It also incorporated Schutte Inc. to act on its behalf in New York. Given that they were seeking to introduce materials that they knew Kwik Lok would claim to be infringing, Schutte BV could reasonably have expected to be subject to suit in New York either due to its own actions or those of Schutte Inc.

The exercise of jurisdiction over Schutte BV would also be reasonable.  Although Schutte BV argues that it would incur a substantial burden as a Netherlands corporation litigating in New York, this argument is not persuasive given its purposeful actions directed towards New York.  See M. Shanken Commc'ns,

2008 WL 2696168l, at *9.  Moreover, given its close relationship with Schutte Inc., which brought this lawsuit, it is difficult to see that the presence of Schutte BV in the lawsuit will cause any substantial additional burden or expense to Schutte BV. Further, it is plain that Kwik Lok has a significant interest in assuring that any determinations apply not only to Schutte Inc. but also to Schutte BV.  The exercise of jurisdiction over Schutte BV is wholly reasonable.

Therefore, Schutte BV's motion to dismiss the claims against it for lack of personal jurisdiction is **denied**.

**IV**

Schutte Inc. seeks a declaratory judgment that its use of five of its Clipps products does not infringe on Kwik Lok's registered and unregistered trademarks.  Kwik Lok moves for partial summary judgment as to Schutte Inc.'s declaratory judgment claims for all of Schutte Inc.'s products except for the Clipps G-Series line, claiming that Schutte Inc. has taken no action to introduce any other products into the United States market.

The standard for granting summary judgment is well established.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S.
317, 322-23 (1986); Gallo v. Prudential Residential Servs., LP,
22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at
the summary judgment motion stage of the litigation is carefully
limited to discerning whether there are any genuine issues of
material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution." Gallo, 22 F.3d at 1224. The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter
that "it believes demonstrate[s] the absence of a genuine issue
of material fact." Celotex, 477 U.S. at 323. The substantive
law governing the case will identify those facts which are
material and "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly
preclude the entry of summary judgment." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)). Summary judgment is improper if there is any evidence

in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible ...." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).  If there are cross motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law.  Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of America, 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration ...." 28 U.S.C. § 2201(a).  The DJA thus explicitly requires that there be an "actual controversy."  In addition, for subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be

22

found.  See Albradco, Inc. v. Bevona, 982 F.2d 82, 85 (2d Cir. 1992).

In this case it is undisputed that there is an independent basis for federal jurisdiction.  The Complaint asserts that the claims arise under the Lanham Act, 15 U.S.C. § 1501, et seq., relating to trademarks.  This is sufficient to allege a basis for federal jurisdiction independent of the DJA.

The question remains, however, whether there is "a case of actual controversy" between the parties sufficient for DJA jurisdiction to be exercised.  In MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), the Supreme Court explained that the "question in each case," to determine whether there is an "actual controversy" pursuant to the DJA, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. at 127 (internal quotation marks and citation omitted).  The Court noted that the dispute must be:

> definite and concrete, touching the legal relations of the parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Id. (internal citation, quotation marks, and alterations omitted).

23

In MedImmune, the parties had entered into a patent
licensing agreement.  The petitioner claimed that it was not
required to make the licensing payments because the patent was
invalid, but it continued to make the payments, under protest,
to avoid a threat to have its sales enjoined if it did not
continue to make the royalty payments.  Id. at 122.  The Supreme
Court found that an actual controversy existed and rejected a
requirement that the declaratory judgment plaintiff have a
"reasonable apprehension of imminent suit."  Id. at 132 n. 11;
see SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372,
1380 (Fed. Cir.2007) ("The Supreme Court's opinion in MedImmune
represents a rejection of our reasonable apprehension of suit
test."); see also Bruce Winston Gem Corp. v. Harry Winston,
Inc., No. 09 Civ. 7352, 2010 WL 3629592, at *3-4 (S.D.N.Y. Sept.
16, 2010) (discussing the Supreme Court's rejection of the
reasonable apprehension of suit test in MedImmune).

Although the Supreme Court dispensed with the "reasonable
apprehension" requirement, the Second Circuit Court of Appeals
has stated that "the threat of future litigation remains
relevant in determining whether an actual controversy exists."
Nike, Inc. v. Already, LLC, 663 F.3d 89, 95-96 (2d Cir. 2011),
aff'd, 133 S. Ct. 721 (2013).  The plaintiff still has the
burden to show that there are adverse legal interests between
the parties and that the plaintiff "engaged in a course of

conduct evidencing a definite intent and apparent ability to commence use of the allegedly infringing marks." Bruce Winston, 2010 WL 3629592, at *4.

Kwik Lok appears begrudgingly to accept that there is an existing case or controversy with regard to the Clipps G-Series because Schutte Inc. had advertised that product on its website and distributed a small amount of promotional samples in the United States.  It argues that for all of the other products, no steps at all were taken to introduce them into the U.S. market. (See Apr. 14 Abbenhuis Dep. 281-282 (stating that Schutte has not shipped any products into the United States other than the G-Series); Apr. 14 Abbenhuis Dep. 315 (stating that nothing has been done to promote the Clipps products or brand in the United States); Abbenhuis Aff. ¶ 7 ("Schutte Inc. has not designed, manufactured, offered for sale, and/or sold any products in the United States."))  Kwik Lok argues that Schutte Inc. did not have the ability to commence use of its other Clipps products because it had not yet made commercial versions, did not have a timetable for doing so, and still needed to make design drawings and contract with a third party to make the molds.  (See Van Drunen Dep. 58-59, 125-127.)

Schutte Inc. responds generally that it had to proceed cautiously in bringing its products over to the United States due to fear of litigation from Kwik Lok.  It points to the

Netherlands litigation, which it claims involved the same
essential products, and it alleges that Mr. Miller of Kwik Lok
stated, while at a meeting in the Netherlands, that Kwik Lok
would "undertake all measures to prevent [Schutte] from bringing
[its] plastic bag closures to the United States." (See
Abbenhuis Decl. at ¶ 3.)  It also points to Kwik Lok's
litigation with other parties in the United States over the '043
Registration.  It argues that Kwik Lok "threatened customers"
and directed them to report to Kwik Lok if they received any
Schutte Inc. products. (See Abbenhuis Decl. at ¶ 27.)  Finally,
it argues that Kwik Lok has confirmed all of this adversarial
behavior by bringing counterclaims in the present action.

    Schutte Inc. further claims that it has the present
intention and capacity to ship its products into the United
States, and that its prudence cannot be held against it.  See
MedImmune, Inc., 549 U.S. at 130 (stating that there may be a
case or controversy when there is current exposure to liability
due to "plaintiff's self-avoidance of imminent injury").  It
contends that the deposition testimony offered by Kwik Lok does
not accurately reflect its marketing plans, and that, in any
case, it has taken many steps since then to introduce its
products into the United States market, including contacting
potential customers, shipping more closures, and advertising
more products on its website.

26

Under the Declaratory Judgment Act, each claim made by Schutte Inc. must present a case or controversy as to that product.  See Bill's Birds Inc. v. Trademarketing Res. Inc., 920 F. Supp. 2d 357, 363 (E.D.N.Y. 2013) (finding an actual controversy for one set of items, but dismissing another set of claims due to a lack of "immediacy or ability to manufacture or sell particular items" at issue in those claims).  This case or controversy must exist at the time of the filing of the complaint.  Organic Seed Growers & Trade Ass'n v. Monsanto Co., 851 F. Supp. 2d 544, 554 n.7 (S.D.N.Y. 2012), aff'd, 718 F.3d 1350 (Fed. Cir. 2013), cert. denied, 134 S. Ct. 901 (2014).  Jurisdiction cannot be "carried back" to the time of the original complaint by allegations in an amended complaint.  Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377, 1384 (Fed. Cir. 2010).

Schutte Inc. urges that the Court consider this new evidence in order to resolve uncertainty, but much of the evidence was created nearly two years after the complaint was filed and shortly prior to the filing of the present summary judgment motions.  (See Abbenhuis Decl. Ex. 3 (showing product shipments made in May of 2014).)  To consider such evidence would "invite a declaratory judgment plaintiff in a [trademark] case to file suit at the earliest moment it conceives of any

27

potential benefit to doing so in an attempt to draw an infringement suit in response." Organic Seed Growers, 851 F. Supp. 2d at 554 n.7 (quoting Innovative Therapies, 599 F.3d at 1384). Therefore, this Court must dismiss each declaratory judgment claim made by Schutte if it did not have the "definite intent and apparent ability" to commence use of each allegedly infringing product on July 18, 2012, the date of the filing of the original complaint.[5] Bruce Winston, 2010 WL 3629592, at *4.

Consequently, all of the evidence that Schutte points to after the filing date, such as shipments made in May of 2014, cannot support jurisdiction. Schutte must show that as of July, 2012, it had taken "meaningful steps" towards the use of the products in question in the United States, such as gauging consumer interest, designing prototypes, and devoting "significant" time and money into the product's introduction into the market. Gelmart Indus., Inc. v. Eveready Battery Co., Inc., No. 13 Civ. 6310, 2014 WL 1512036, at *3 (S.D.N.Y. Apr. 15, 2014) (citing Starter Corp. v. Converse. Inc., 84 F.3d 592, 596-97 (2d Cir. 1996)). Undisputed evidence in the record shows that Schutte Inc. had not reached that point at the time this

---

[5] At oral argument, Schutte Inc. suggested for the first time that all of the Clipps products are so similar that they should be evaluated together as one product line. Nevertheless, Schutte Inc. cannot dispute that despite these similarities, they are still different products. Consequently, jurisdiction for each product must be evaluated separately. See Bill's Birds, 920 F. Supp. 2d at 363.

lawsuit was filed, other than with respect to the Clipps G-Series.    Rather, in the time leading up to July 2012 and shortly thereafter, while Schutte was considering an expansion into the United States it had not taken concrete steps to effect such a plan, and did not begin meaningful activity with regard to any products other than the Clipps G-Series until mid-2014. (See June 20 McQuillen Decl. Ex. A (memorandum describing a March 2012 meeting in which Schutte discussed its lack of activity in the United States and considered options for entering the market); Van Drunen Dep. at 59 (stating that, as of April 2014, Schutte did not have a timetable for when it would make the Clipps GL-Series for commercial purposes); Abbenhuis Decl. Ex. 3 (showing product shipments made in May of 2014).)

     Schutte Inc. also cannot show that there was sufficient adversity of legal interests at the time the complaint was filed as to products other than the Clipps G-Series.   The Netherlands litigation alone should not be treated as a claim by Kwik Lok that Schutte violated its United States trademark rights, because Kwik Lok only asserted its European trademark rights in that litigation.   See Avon Products, Inc. v. Moroccanoil, Inc., No. 12 Civ. 4507, 2013 WL 795652, at *3 (S.D.N.Y. Mar. 4, 2013) (dismissing plaintiff's argument for a controversy based on related trademark litigation in Canada as not demonstrating that

the defendant "intends to take action to enforce its U.S. trademarks against Plaintiff").  The cases relied upon by Schutte Inc. on this point support this conclusion.  <u>See</u> <u>Dr. Beck & Co. G. M. B. H. v. Gen. Elec. Co.</u>, 210 F. Supp. 86, 92 (S.D.N.Y. 1962) <u>aff'd</u> <u>sub nom.</u> <u>Dr. Beck & Co. G.M.B.H. v. Gen. Elec. Co.</u>, 317 F.2d 538 (2d Cir. 1963) (holding that a controversy in the United States cannot be implied by the bringing of a patent suit in France, even if the French patent was for the same invention); <u>Studex Corp. v. Blomdahl Med. Innovation AB</u>, 355 F. Supp. 2d 3, 8-9 (D.D.C. 2004) (holding that, although foreign litigation may be one factor considered in the totality of circumstances, the defendant's patent infringement lawsuit in Sweden only illustrated its willingness to enforce its European patent rights).

Similarly, the statement allegedly made by Kwik Lok during the course of the Netherlands litigation, of which there is no evidence in the record other than a recent declaration by Schutte BV Director Mr. Abbenhuis, can only be taken as relating to that litigation, if it is considered at all.  <u>See</u> <u>Avon Products</u>, 2013 WL 795652, at *4 (rejecting a letter sent in the course of the Canadian trademark registration proceeding as not signaling an asserted violation of United States trademarks); <u>Studex Corp.</u>, 355 F. Supp. 2d at 8 (rejecting a letter sent in

anticipation of European litigation as not indicating an apprehension of suit in the United States).

Kwik Lok's prior litigation with other parties also does not support jurisdiction in this case.  Prior suits brought by a trademark holder may be one factor to consider in assessing the totality of the circumstances, but the suit must be sufficiently similar to one that the defendant may potentially bring against the plaintiff.  See Organic Seed Growers, 851 F. Supp. 2d at 552.  In this case, Schutte Inc. relies on a 1993 settlement between Kwik Lok and World Manufacturing Inc., which centered on an unregistered version of Kwik Lok's current '043 Registration. This single instance pursued by Kwik Lok over twenty years ago does not give rise to an actual controversy with Schutte Inc. See Avon Products, 2013 WL 795652, at *5 (stating that "[p]rior actions against other infringers do not give rise to an actual controversy with a non-party"); Indigodental GMBH & Co. JG v. Ivoclar Vivadent, Inc., No. 08 Civ. 7657, 2008 WL 5262694, at *3 (S.D.N.Y. 2008) (holding that no actual controversy existed when defendant enforced different patents against other parties).

Schutte Inc. also argues that Kwik Lok's counterclaims alleging infringement have created an actual controversy.  It is questionable whether such counterclaims, filed after the complaint, may create jurisdiction where none originally existed.  See Organic Seed Growers, 851 F. Supp. 2d at 554.

Furthermore, Kwik Lok reasonably argues that it was required to bring these compulsory counterclaims when Schutte Inc. expanded this litigation to include numerous products as to which there was not otherwise a genuine controversy.  See Starter Corp. v. Converse, Inc., No. 95 Civ. 3678, 1996 WL 684165, *5 (S.D.N.Y. Nov. 26, 1996) (stating that state and federal trademark dilution claims were compulsory when filed against a complaint seeking a declaration of non-infringement).  In any event, this argument is moot in light of Kwik Lok's offer to dismiss its counterclaims related to Schutte's claims concerning products with respect to which there would otherwise be no jurisdiction.

Schutte Inc. has also requested a declaratory judgment that its use of its products does not infringe or dilute "any other intellectual property or other rights of Kwik Lok in the U.S." (See Sec. Am. Compl. ¶¶ 150, 156.)  To the extent that this request pertains to products other than the Clipps G-Series and other rights not already articulated by Schutte, it is too vague to meet the Declaratory Judgment Act's standards for jurisdiction.  A request for declaratory judgment must indicate the product which Schutte Inc. intends to market at the outset of the litigation and the intellectual property right that it claims is not being infringed.  See PocketMedicine.com, Inc. v. John Wiley & Sons, Inc., No. 04 Civ. 8369, 2006 WL 785283, at *4 (S.D.N.Y. Mar. 23, 2006) (dismissing declaratory judgment action

for lack of jurisdiction due to failure of the complaint to
specify what the plaintiff would be using from the defendant's
copyrighted work).

At the time this litigation was brought, the Schutte
parties had made plans and had in fact sent some of its Clipps
G-series products to New York to be shown to prospective
customers.  That presented a specific controversy with respect
to that specific product line and whether it infringed Kwik
Lok's intellectual property rights.  Any such dispute would have
to be resolved with respect to the specific products which the
plaintiff claimed did not infringe specific intellectual
property rights of the defendant.  After the litigation was
brought, Schutte Inc. attempted to expand the litigation to
numerous other product lines as to which there is no evidence
that Schutte Inc. had any plans to introduce those products into
the United State market.  To adjudicate the possible
intellectual property rights infringed or not infringed by those
products would be the equivalent of an advisory opinion without
the definite facts required to adjudicate an actual controversy.
See MedImmune, 549 U.S. at 142; Bruce Winston, 2010 WL 3629592,
*6 (dismissing declaratory judgment action that would "entail
advisory opinions into how far the plaintiff[] can go in its
future activities without infringing on the defendants' marks").

In light of the foregoing, there is no jurisdiction over all of the claims by Schutte Inc. for a declaratory judgment as to non-infringement and non-dilution with respect to any of the Clipps products other than the Clipps G-Series.  Kwik Lok's motion for summary judgment dismissing these declaratory judgment claims other than with respect to the Clipps G-Series for lack of subject matter jurisdiction is **granted**.  Schutte Inc. has agreed to withdraw all of its claims in the Second Amended Complaint related to the Schutlok products. Kwik Lok's motion for summary judgment as to those claims is therefore moot.  Kwik Lok has agreed to withdraw all of its counterclaims except those related to the G-Series products, leaving its counterclaims for federal trade dress infringement based on the '043 Registration, federal unfair competition based on the beveled and notched Kwik Lok product configuration, federal dilution of the '043 Registration, common law unfair competition based on the '043 Registration and the beveled and notched Kwik Lok product configuration and other unregistered product configurations, and dilution under state law based on its rights under the '043 Registration.

**V**

Schutte Inc. seeks a declaration that Kwik Lok's '043 Registration and '545 Registration are invalid, and requests an

order cancelling those trademarks.[6]  Kwik Lok moves for summary

judgment on the claims as to the '545 Registration, arguing that

Schutte lacks standing on these claims because it does not have

a sufficient commercial interest in the cancellation of that

mark.

Schutte Inc. has agreed to withdraw any claims in

connection to the '545 Registration, including its cancellation

claim.  Kwik Lok's motion for summary judgment on this claim is

therefore moot.

VI

Kwik Lok moves for summary judgment dismissing Schutte

Inc.'s claims against it for false advertising.  In Count Five,

Schutte Inc. accused Kwik Lok of false advertising in violation

of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  In Count

Six, Schutte Inc. accused Kwik Lok of false advertising in

violation of New York General Business Law §§ 349, 350, and

350-a.  Subsequent to Schutte Inc.'s allegations that Kwik Lok

made false and misleading statements on its website regarding

its products' patent protections, Kwik Lok removed the allegedly

---

[6] The parties have stipulated regarding the '804 Registration: Kwik Lok has covenanted not to sue based on that mark and Schutte Inc. has dismissed all of its claims related to that mark.  Therefore, Schutte Inc.'s claims under Count One and Two of the Second Amended Complaint with respect to the '804 Registration and Count Four of the Second Amended Copmlaint are **dismissed**. Kwik Lok's motion for summary judgment as to Schutte's claims based on the '804 Registration is moot.

misleading statements.  Schutte Inc. now does not contest Kwik Lok's motion for summary judgment dismissing those claims.

Kwik Lok's motion for summary judgment dismissing Counts Five and Six of Schutte Inc.'s Second Amended Complaint alleging false advertising is therefore **granted**.

VII

Schutte Inc. moves to dismiss Kwik Lok's counterclaims for infringement of Kwik Lok's trade dress, dilution, unfair competition, and injury to business reputation, or alternatively, for summary judgment dismissing the dilution and infringement claims.  Because Kwik Lok has withdrawn all of its counterclaims except those related to the Clipps G-Series, Schutte Inc.'s motion with regard to Kwik Lok's other claims is moot.  Kwik Lok's remaining counterclaims concern its '043 Registration and its unregistered trade dress rights for its beveled and notched product configuration.

**A.**

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence

36

that might be presented at a trial but merely to determine
whether the complaint itself is legally sufficient." Goldman v.
Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should
not dismiss the complaint if the plaintiff has stated "enough
facts to state a claim to relief that is plausible on its face."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court
should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in the complaint is
inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken.  See Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Ramirez
v. Riverbay Corp., No. 13 Civ. 2367, 2014 WL 3800489, at *2
(S.D.N.Y. Aug. 1, 2014).

In its motion to dismiss, Schutte Inc. relies principally on affidavits to argue that Kwik Lok's allegations are not plausible.  However, at the motion to dismiss stage, this Court may only rely on documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers, 282 F.3d at 153.  Therefore, consideration of Schutte Inc.'s affidavits would be improper at the motion to dismiss stage.

A court may decide in its discretion whether to convert a motion to dismiss into a motion for summary judgment. Fed.R.Civ.P. 12(d).  There must be notice of the conversion; and the Court must "afford all parties the opportunity to present supporting material."  Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F. 2d 24, 25 (2d Cir. 1988); see also Williams v. Secure Res. Commc'ns, No. 11 Civ. 03986, 2012 WL 2864519, at *2 (S.D.N.Y. July 12, 2012).  In determining whether to convert a motion on the pleadings into a motion for summary judgment, the Court must consider whether conversion is likely to facilitate the disposition of the action.  See, e.g., Lennon ex rel Lennon v. Screen Creations, Ltd., 939 F. Supp. 287, 292 (S.D.N.Y. 1996).  Because there is already another summary judgment motion

by Schutte Inc. presently before the Court, conversion of the motion to dismiss to a summary judgment motion would not facilitate disposition of this action.

Schutte Inc.'s motion to dismiss the counterclaims is therefore **denied**.

### B.

Schutte Inc. moves for summary judgment dismissing Kwik Lok's counterclaims for trade dress infringement.  The initial difficulty with this motion is that it fails to distinguish among the counterclaims.  The first counterclaim argues that Schutte products, particularly the Clipps G-Series infringes the '043 registered product configuration and thereby violates § 32(1) of the Lanham Act, 15 U.S.C. § 114(1).[7]  The second counterclaim alleges that Schutte products violate unregistered product configurations for Kwik Lok products in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).  In particular, as relevant to the remaining issues in this case, Kwik Lok claims rights to trade dress in a beveled and notched product configuration which it argues is infringed by Schutte's Clipps

---

[7] The counterclaim is asserted against both Schutte Inc. and Schutte BV and includes allegations involving the '545 Registration, which are now moot, and allegations against products other than the Clipps G-Series, which have now been withdrawn.

G-Series.[8]  Schutte Inc. has failed to show it is entitled to summary judgment dismissing either claim.

Section 32(1) of the Lanham Act protects registered marks. It provides a private cause of action against any person who, without the consent of the registrant:

> (a) [uses] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

Section 43(a) of the Lanham Act protects unregistered marks and provides a private cause of action against any person who:

> in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... or as to the origin, sponsorship, or approval of his or her goods ... by another person....

15 U.S.C. § 1125(a).

The protection of registered and unregistered trademarks under the Lanham Act extends to trade dress.  Wal-Mart Stores,

---

[8] There is a third counterclaim for common law unfair competition which alleges that Schutte violated Kwik Lok's trade dress rights in product configurations.  Because Schutte Inc. has not attempted to address this counterclaim, the Court could not grant summary judgment dismissing it.  In any event, trade dress protection under New York law is similar to federal law, except there is no requirement to show secondary meaning.  See Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 250-51 (S.D.N.Y. 2004).

Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000). Trade dress "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the customer." Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997). It is "essentially a product's total image and overall appearance ... as defined by its overall composition and design, including size, shape, color, texture, and graphics." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995) (internal quotations and citations omitted). The protection of trade dress under the Lanham Act serves "to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 774 (1992) (internal quotations omitted). However, "the Lanham Act must [also] be construed in the light of a strong federal policy in favor of vigorously competitive markets." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 379 (2d Cir. 1997).

To succeed on its trade dress infringement claims, Kwik Lok must show "(a) that its trade dress is entitled to protection under the Act, and (b) that the defendant's dress infringes on the plaintiff's dress by creating a likelihood of confusion."

Id. at 377.   Two types of trade dress are entitled to
protection: product packaging and product design. "Product
packaging" trade dress refers to the "dressing" or "packaging"
of a product.   "Product design" trade dress refers to the design
or configuration of the product itself.   See Milstein, 58 F.3d
at 31; see also Heller Inc. v. Design Within Reach, Inc., No. 09
Civ. 1909, 2009 WL 2486054, at *4-5 (S.D.N.Y. Aug. 14, 2009).
Kwik Lok claims protection for the shape and design of its bag
closures—for product design trade dress.

    According to section 7(b) of the Lanham Act, a certificate
of registration of a trademark issued by the USPTO is prima
facie evidence of the mark's validity, of the registrant's
ownership of the mark, and of the registrant's exclusive right
to use the mark.   See Gameologist Grp., LLC v. Scientific Games
Int'l, Inc., 838 F. Supp. 2d 141, 153 (S.D.N.Y. 2011), aff'd,
508 F. App'x 31 (2d Cir. 2013)(summary order).   Use of a
registered mark for five consecutive years deems the mark
incontestable and represents conclusive evidence of the first
prong: that the mark is entitled to protection.   See Cadbury
Beverages, Inc. v. Cott Corp., 73 F.3d 474, 476 (2d Cir. 1996);
15 U.S.C. § 1115(b) (stating that an incontestable registration
"shall be conclusive evidence of the validity of the registered
mark"). However, an incontestable mark may be challenged if it

is functional, generic, or has been abandoned.  See 15 U.S.C. §
1115(b)(2); id. § 1115(b)(8); Energy Intelligence Grp., Inc. v.
UBS Fin. Servs., Inc., No. 08 Civ. 1497, 2009 WL 1490603, at *4
(S.D.N.Y. May 22, 2009)("[A]n incontestable mark that becomes
generic may be canceled at any time.")

Where a mark is not registered, the plaintiff has the
burden of proving that its mark is a valid trademark.  See Reese
Publishing Co., Inc. v. Hampton Int'l Communications, Inc., 620
F.2d 7, 11 (2d Cir. 1980); Trustees of Columbia Univ. v.
Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 742 (S.D.N.Y.
1997).  A plaintiff may make this showing for trade dress if the
mark is not functional and if it is either inherently
distinctive or has acquired secondary meaning in the
marketplace.  Nora Beverages, Inc. v. Perrier Group of Am.,
Inc., 269 F.3d 114, 118-19 (2d Cir. 2001); see also Yurman
Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d
506, 510 (S.D.N.Y. 2003).  A plaintiff claiming "secondary
meaning" must show that "in the minds of the public, the primary
significance of the mark is to identify the source of the
product rather than the product itself."  Yurman Design, Inc. v.
PAJ, Inc., 262 F.3d 101, 115 (2d Cir. 2001).

Schutte Inc. argues that Kwik Lok's trade dress rights in
the '043 Registration are invalid because they do not identify

43

Kwik Lok as the source of the product, they have not acquired
secondary meaning, they are generic, and have been abandoned.
Finally, Schutte Inc. asserts that even if Kwik Lok's trademark
is protectable, Kwik Lok cannot succeed on a counterclaim for
infringement because there is no likelihood of confusion between
Kwik Lok's products and the Clipps G-Series.

Kwik Lok validly registered its '043 Registration in 1996
and has been using it in commerce continuously since then.  (See
June 20 Miller Decl. ¶ 5, Ex. Y; June 20 Miller Decl. ¶ 9, Ex.
S.)  The '043 Registration is therefore incontestable.  Cadbury
Beverages, 73 F.3d at 476.  Much of Schutte Inc.'s arguments in
its summary judgment motion appear directed at Kwik Lok's
unregistered trade dress rights.  Nevertheless, Schutte Inc. may
still challenge the validity of the '043 Registration if it can
show that it is generic or has been abandoned.

Schutte Inc.'s argument that Kwik Lok's trade dress is
generic appears to be largely based on what it claims is a vague
and overbroad description of the product, the alleged failure of
Kwik Lok's deposition witnesses to identify distinctive features
of the product, and news articles that identify the products in
generic terms.  Yet in order to prove that a registered trade
dress is invalid because it is generic, Schutte Inc. must show
that the trade dress "consists of the shape of a product that

conforms to a well-established industry custom." <u>Fun-Damental
Too</u>, 111 F.3d at 1000.  Kwik Lok has produced evidence showing
that its design is unique in the industry and that it has gone
to great lengths to promote this design as its own. (<u>See</u> June
20 Miller Decl. ¶¶ 21-26, Exs. K, L, M.)   There are therefore
sufficient factual disputes that preclude granting summary
judgment on this claim.

Schutte Inc. also argues that the '043 Registration has
been abandoned unintentionally because Kwik Lok has been using
the mark in a generic way, advertising the functional benefits.
To prove abandonment, one must show "either the owner's intent
to abandon the mark, or a course of conduct on the part of the
owner causing the mark to become generic or lose its
significance as a mark." <u>Hermes Int'l v. Lederer de Paris Fifth
Ave., Inc.</u>, 219 F.3d 104, 110 (2d Cir. 2000).  Kwik Lok has used
the '043 Registration in commerce continuously since its
registration.  (June 20 Miller Decl. ¶ 8, Ex. S.)  Furthermore,
Kwik Lok's evidence of the marketing of its products and its
uniqueness within the industry has created a factual dispute as
to whether its use has become generic.  (<u>See</u> June 20 Miller
Decl. ¶¶ 21-26, Exs. K, L, M.)

Schutte Inc. also argues that Kwik Lok has unintentionally
abandoned its trademark rights by engaging in uncontrolled or

45

"naked" licensing—namely, "a lack of adequate quality control
over goods and services sold under the mark by the licensees."
Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 261-62 (2d
Cir. 2011).  Schutte Inc. argues that by allowing third party
distributors and consumers, such as bakeries, to print their own
trademarks, prices, and other promotional messages on Kwik Lok's
bag closures, Kwik Lok has engaged in naked licensing and
abandoned its trademark.  However, as the Second Circuit Court
of Appeals has stated, "naked licensing will lead to an
abandonment of a mark only where the mark loses its
significance."  Id. at 265.  Kwik Lok's bag closures are used as
a component of whichever bagged product is being sold.  Despite
a third-party user's labeling of a price or some other logo on
the closure, Kwik Lok's product configurations still retain
their significance to the relevant market of distributors.  See
Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 369
(2d Cir. 1959) (stating that any changes to a product in the
retail market would not necessarily affect its trademark rights
in the wholesale market).  Schutte Inc.'s argument for summary
judgment as to abandonment is therefore without merit.

    As to Kwik Lok's unregistered trade dress rights, Schutte
Inc. argues that they are invalid because they are not
indicative of their source and have not acquired secondary

meaning.  Its support for both arguments is similar to its arguments that the registered trade dress is generic: Kwik Lok's allegedly vague and general descriptions of the product, either by deposition testimony or advertisement, identify no distinctive attributes of the product and do not promote an association between the product and source sufficient to acquire secondary meaning.

Trade dress has secondary meaning when "the *primary significance* of the [trade dress] in the minds of the consuming public is not the product but the producer," such that the trade dress tends to be associated not just with the goods or services but with a single, though possibly anonymous, source.  20th Century Wear, Inc. v. Sanmark–Stardust Inc., 815 F.2d 8, 10 (2d Cir. 1987) (internal quotation marks omitted) (emphasis in original).  Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use.  Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 n. 4 (2d Cir. 1997); see also Yurman Design, 275 F. Supp. 2d at 512-13.

Kwik Lok has produced evidence showing that it has sold the Beveled Notched Square exclusively and successfully from 1996 to

2013.  (See June 20 Miller Decl. ¶ 19, Ex. T.)  It has also
spent millions of dollars on advertising and promoting its trade
dress rights.  (See Miller Decl. ¶ 24, Exs. X, Q.)  Neither side
has produced studies regarding consumer identification of the
source of Kwik Lok's products.  In assessing secondary meaning,
a court looks to whether "a substantial segment of the relevant
group of consumers" associates the product with the producer.
Centaur Commc'ns, 830 F.2d at 1222.  Both sides agree that a
principal target of Kwik Lok's extensive marketing and sales is
a knowledgeable group of specialized wholesale buyers, who buy
large quantities of bag closures and then market them to
bakeries and grocers.  Kwik Lok argues that it has successfully
made its product unique in the minds of this main consumer group
within the bag closures market, (see Miller Decl. ¶ 21,) and
Schutte Inc. has presented no evidence to show otherwise.
Therefore, genuine issues of material fact preclude summary
judgment as to the validity of Kwik Lok's unregistered trade
dress rights.

     Finally, Schutte Inc. argues that even if Kwik Lok's
registered and unregistered trademarks were found to be valid,
Kwik Lok's counterclaims for infringement cannot succeed because
there can be no likelihood of confusion between Kwik Lok's
products and the Clipps G-Series.

The test for consumer confusion is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the defendant's mark," Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993); see also N.Y. Stock Exch. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550, 554–55 (2d Cir. 2002); Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C., 182 F.3d 133, 138 (2d Cir. 1999); "or that there may be confusion as to [the] plaintiff's sponsorship or endorsement of the junior mark," Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 502 (2d Cir. 1996); see also Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108–09 (2d Cir. 2010); N.Y. Stock Exch., 293 F.3d at 555.  Proof of actual confusion is not necessary.  See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1227 (2d Cir. 1987), overruled on other grounds Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1043 (2d Cir. 1992).  The ultimate question as to likelihood of confusion is a question of law for the Court.  See, e.g., Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994).  The question of likelihood of confusion is appropriate for resolution on a motion for summary judgment "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." Cadbury

49

Beverages, 73 F.3d at 478; see also Gameologist Grp., 838 F.
Supp. 2d at 156.

     In Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d
492 (2d Cir. 1961) (Friendly, J.), the Court of Appeals for the
Second Circuit set forth eight non-exclusive factors that courts
are to consider when determining whether a likelihood of
confusion exists.  Those factors are: 1) the strength of the
plaintiff's mark; 2) the similarity between the parties' marks;
3) the competitive proximity of the parties' products; 4) the
likelihood that the plaintiff will "bridge the gap" and offer a
product like the defendants'; 5) evidence of actual confusion
between the parties' products; 6) evidence of good faith on the
defendants' part; 7) the quality of the defendants' product; and
8) the sophistication of the relevant customers.  Id. at 495;
see also Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir.
2013); Sly Magazine, LLC v. Weider Publications L.L.C., 346 F.
App'x 721, 722 (2d Cir. 2009) (summary order); Hormel Foods, 73
F.3d at 502-05.  The decision as to whether a mark infringes
requires a "comprehensive analysis of all the relevant facts and
circumstances."  Vitarroz Corp. v. Borden, Inc., 644 F.2d 960,
968 (2d Cir. 1981).  The Court of Appeals for the Second Circuit
has instructed that:

          [T]he Polaroid factors are not, of course, "exclusive" and
          should not be applied "mechanically."  No single factor is

50

dispositive, and cases may certainly arise where a factor
is irrelevant to the facts at hand.  But it is incumbent
upon the district judge to engage in a deliberate review of
each factor, and, if a factor is inapplicable to a case, to
explain why.  The steady application of Polaroid is
critical to the proper development of trademark law, for it
is only when the Polaroid factors are applied consistently
and clearly over time that the relevant distinctions
between different factual configurations can emerge.

Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 400 (2d
Cir. 1995) (citations omitted); see also N.Y. Stock Exch., 293
F.3d at 555.  When the likelihood of confusion is in doubt, the
question will be resolved in favor of the senior user.  See
Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 909 (3d Cir. 1952);
Brockmeyer v. The Hearst Corp., No. 01 Civ. 7746, 2002 WL 1402320,
at *8 (S.D.N.Y. June 27, 2002); Lambert Pharmacal Co. v. Bolton
Chem. Corp., 219 F. 325, 326 (S.D.N.Y. 1915 (L.Hand, J.)); see
also Gameologist Grp., 838 F. Supp. 2d at 157.

Schutte Inc. argues that five of the Polaroid factors weigh
in favor of granting it summary judgment as to the likelihood of
consumer confusion.  It argues that Kwik Lok's simple design and
history of promoting only the functionality of the product makes
it a weakly protected mark; that Kwik Lok's and Schutte Inc.'s
marks are dissimilar; that there is no actual confusion; that there
is a high level of consumer sophistication in this market; and
that there is no close proximity of the products upon purchase.

Schutte Inc.'s arguments are not supported by sufficient
evidence in the record so as to preclude a genuine dispute of

material fact on this issue.  With respect to the strength of
its marks, Kwik Lok has shown that it has invested a significant
amount of resources into advertising and promotion.  (See June
20 Miller Decl. ¶ 24, Ex. X); Gucci Am., Inc. v. Guess?, Inc.,
868 F. Supp. 2d 207, 247 (S.D.N.Y. 2012) (finding sales and
extent of advertising significant in assessing the first
Polaroid factor).  Kwik Lok has presented evidence that this
history of marketing and sales success of its bag closures has
led to acquired distinctiveness in the relevant market.  See
Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't, LLC, No.
11 Civ. 1594, 2014 WL 1170379, at *4 (S.D.N.Y. Mar. 21, 2014)
(holding that the acquired distinctiveness of plaintiff's mark
weighed in favor of the mark's strength).  A reasonable
factfinder could therefore find that Kwik Lok's mark is a strong
mark.

    As to the second factor, a reasonable factfinder could find
that the test for similarity is met here, namely that a
"consumer who is somewhat familiar with the plaintiff's mark
would likely be confused when presented with defendant's mark
alone." Akiro LLC v. House of Cheatham, Inc., 946 F. Supp. 2d
324, 334 (S.D.N.Y. 2013).  Kwik Lok argues and presents evidence
that the overall impression of the products is similar. (See
June 20 McQuillen Decl. Ex. D.)  While a side-by-side comparison

of the products is not the correct test for similarity, Schutte

Inc. has produced no evidence to show distinctions between the

overall commercial impressions of the two groups of products as

presented to consumers in the marketplace.  See Malletier v.

Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 539 (2d

Cir. 2005).

With respect to the third and fourth factors, the factors

weigh in favor of finding a likelihood of confusion.  Schutte

Inc. seeks to market its Clipps G-Series in the United States in

direct competition with the Kwik Lok bag closures and to the

same market.  (See June 20 McQuillen Decl., Ex. A (Schutte BV

memorandum discussing introduction of Schutte products into the

United States market and competition with Kwik Lok)); Cadbury

Beverages, 73 F.3d at 481 (holding that, despite sophisticated

customers, a disputed question of material fact existed on the

third factor between competitors offering a similar product);

Akiro, 946 F. Supp. 2d at 336 (holding that products competing

in the same market favored a likelihood of confusion).

On the fifth factor, there is no showing of actual

confusion, but actual confusion is not required.  Centaur

Commc'ns, 830 F.2d at 1227.  Moreover, Schutte Inc.'s effort to

enter the market is only beginning and thus it is not surprising

that there is no showing of actual confusion.

The sixth factor of good faith weighs against Schutte Inc. It is plain that Schutte Inc.'s parent company, Schutte BV, was well aware of Kwik Lok's products and sought to compete directly against them by introducing a similar product.  (See June 20 McQuillen Decl., Ex. A (Schutte BV memorandum stating "Schutte has been in the market with 'a copy' of the Kwiklok closure. Smartly done, and just a little bit different from Kwiklok")). This is some evidence of bad faith.  See Luv n' Care, Ltd. v. Mayborn USA, Inc., 898 F. Supp. 2d 634, 648 (S.D.N.Y. 2012) (citing Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991)) ("[Bad faith] looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.")

As to the seventh factor, Kwik Lok has not presented any evidence of issues with the quality of Schutte Inc. products. However, as with evidence of actual confusion, it is not surprising that quality issues have not arisen with respect to a product that is only beginning to enter the market. This factor is neutral.

In short, all Schutte Inc. has arguably shown at this point is that there is no evidence of actual confusion or quality issues yet and that there is a high level of consumer

sophistication in the market.  Although one <u>Polaroid</u> factor may be dispositive, Schutte Inc. has failed to carry its burden on three of the most important factors: strength, similarity, and proximity.  <u>See</u> <u>Mobil Oil Corp. v. Pegasus Petroleum Corp.</u>, 818 F.2d 254, 258 (2d Cir. 1987) (suggesting that strength, similarity, and proximity are the most critical <u>Polaroid</u> factors).  Therefore, summary judgment on the likelihood of consumer confusion as to Kwik Lok's trade dress rights is inappropriate.  <u>See, e.g.</u>, <u>Bath & Body Works</u>, 2014 WL 1170379 at *9 (denying defendant's summary judgment motion on plaintiff's trade dress infringement claim after finding material issues of fact existed as to <u>Polaroid</u> factors).

Schutte Inc.'s motion summary judgment on Kwik Lok's counterclaims for trade dress infringement of its '043 Registration and beveled and notched product configuration is **denied**.

## C.

Schutte Inc. moves for summary judgment dismissing Kwik Lok's counterclaim for federal trade dress dilution under 15 U.S.C. § 1125(c)(1).[9]

---

[9] Schutte Inc.'s argument does not address the separate counterclaim for dilution and injury to business reputation under N.Y. General Business Law § 360-l, the Fifth Counterclaim.  The Court could not therefore dismiss that counterclaim.

A trademark holder claiming dilution under the Trademark Dilution Revision Act ("TDRA") must show the following four elements: (1) the mark is famous, (2) the defendant is making use of the mark in commerce, (3) the defendant's use of the mark began after the mark became famous, and (4) the likelihood of dilution.  Lanham Act § 43(c), 15 U.S.C. § 1125(c)(1).  The Second Circuit Court of Appeals noted that the element of federal antidilution law that "most narrows the universe" of claimants is the requirement that "the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the FTDA."  Savin Corp. v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004).

The TDRA states that in order for a mark to be "famous," it must be "widely recognized by the general consuming public of the United States" as a designation of the source of the goods or of the mark's owner.  Lanham Act § 43(c)(2)(A), 15 U.S.C. § 1125(c)(2)(A).  The TDRA outlines four factors that a court may consider to determine whether a mark qualifies as "famous" under the statute: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the "amount, volume, and geographic extent of sales of goods and services offered under the mark," (3) the "extent of actual recognition of the mark," and (4) whether "the mark was registered."  Id.  Based on these criteria, courts generally have limited famous marks to

those that receive multi-million dollar advertising budgets,
generate hundreds of millions of dollars in sales annually, and
are almost universally recognized by the general public.  See
Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635 (9th
Cir.2008) (holding that a reasonable jury could find "Hot
Wheels" famous because Mattel had spent $350 million in
advertising and had sold three billion units since inception);
TCPIP Holding Co. v. Haar Communications, Inc., 244 F.3d 88, 99
(2d Cir. 2001) (noting that "Dupont, Buick, or Kodak" exemplify
famous marks deserving protection from dilution); see also
Heller, 2009 WL 2486054, at *3.

Since the registration of its trademarks in 1996, Kwik Lok
has sold five to six billion of the '043 Registration bag
closures per year, (see June 20 Miller Decl. ¶ 9, Ex. S,) and
has spent millions of dollars in advertising.  (See June 20
Miller Decl. ¶ 24, Ex. X.)  However, sales and advertising
numbers alone are generally insufficient to show that a product
has become sufficiently famous to be protected by the TDRA.
See, e.g., TCPIP Holding, 244 F.3d at 99 (holding that trademark
holder's annual sales of $280 million were not enough to
constitute fame); Avery Dennison Corp. v. Sumpton, 189 F.3d 868,
879 (9th Cir.1999) (marks used for decades and parent company
had annual sales of $3 billion and annual advertising costs of
over $5 million).  There must be some showing that the trademark

is famous to the "general consuming public of the United
States," rather than a niche market.  Heller, 2009 WL 2486054,
at *4.

In addition to its sales and advertising numbers, Kwik Lok
points to publication and circulation of product brochures and
catalogs, attendance at industry trade shows, and advertisements
in trade publications.  (See June 20 Miller Decl. ¶¶ 25-30, Exs.
K, L, M.)  Indeed, Schutte Inc. has apparently conceded that
Kwik Lok's trade dress product configurations have acquired fame
based on the combination of the products' continued use over
many years, extensive promotion at trade shows and over the
internet, and the significant number of sales.  (Pl.'s Rule 56.1
Statement Undisputed Fact ¶ 71.)  Rather than disputing that
Kwik Lok's products are famous for purposes of the TDRA, Schutte
Inc. argues that to the extent Kwik Lok's products have acquired
some degree of fame, it is only on the basis of their promotion
and not on any distinctiveness.  However, the fame that Schutte
Inc. has conceded is possessed by Kwik Lok's products is
sufficient to raise at least an issue of fact with respect to
fame necessary to avoid summary judgment.  Savin, 391 F.3d at
450.  Indeed, Schutte Inc. has not argued that the federal
dilution claim should be dismissed because Kwik Lok's marks are
not "famous."

Kwik Lok has also shown that there are issues of fact as to whether Schutte Inc.'s marketing of its Clipps G-Series would cause dilution of its mark through blurring.  See 15 U.S.C. § 1125(c)(2)(B).  Schutte Inc.'s motion for summary judgment dismissing Kwik Lok's counterclaim for dilution under the TDRA is therefore **denied**.

## CONCLUSION

To the extent not specifically addressed above, any remaining arguments are either moot or without merit.  For the reasons explained, the counterclaim defendants' motions to dismiss and for summary judgment are **denied** in their entirety. The plaintiff has **withdrawn** all claims related to the '545 and '804 Registrations and to its Schutlok product line.  The defendant's motion for partial summary judgment is **moot** as to those claims.  The remainder of the defendant's motion for partial summary judgment is **granted**, except any claim for declaratory judgment relating to the Clipps G-Series.  The plaintiff's claims for declaratory judgment under Counts One and Two of the Second Amended Complaint are **dismissed**, except those related to the Clipps G-Series**.**  The defendant has **withdrawn** all of its counterclaims except those asserting its rights under the '043 Registration and its beveled and notched product configuration as against the Clipps G-Series.  Pursuant to the

parties' stipulation, Counts One and Two with respect to the '804 Registration, and Counts Four through Six of the Second Amended Complaint are **dismissed.**  The Clerk is directed to **close all pending motions.**

Because of the extensive claims and counterclaims that have been withdrawn or modified, the plaintiff should file a Third Amended Complaint within fourteen days of the date of this opinion and order.  The defendant should file an amended answer and counterclaim fourteen days thereafter and the counterclaim defendants should file an answer to any counterclaims fourteen days thereafter.

**SO ORDERED.**

Dated:     New York, New York
           September 29, 2014        _____/s/_____
                                            John G. Koeltl
                                     **United States District Judge**